IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MARGARET VOORHEES** | § | |
| | § | |
|   Plaintiff | § | |
| vs. | § | CIVIL ACTION NO.: 4:18-cv-3748 |
| | § | |
| **KELSEY-SEYBOLD CLINIC, P.A.** | § | |
| | § | |
|   **Defendant** | § | |

### RELATORS' AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **NOW COMES** Margaret Voorhees ("Ms. Voorhees" or "Relator"), Plaintiff in the above styled and numbered cause, and files this, her Original Complaint and complains of KELSEY-SEYBOLD CLINIC ("Kelsey-Seybold" or "Defendant"), and for such cause of action would respectfully show the Court as follows:

### I.    PARTIES

    1.    Ms. Voorhees is an individual who resides in Humble County, Texas. Ms. Voorhees was formerly employed by Defendant as billing specialist. She was primarily employed at Kelsey-Seybold in Houston, Texas, and occasionally worked at their Spring, Texas, location.

    2.    As required under the False Claims Act, 31 U.S.C. §§ 3729 and 3730 *et. seq.*, a copy of this Complaint and written disclosure of all material evidence the Relator possessed at the time the Original Complaint was filed has been provided to the Attorney General of the United States and to the United States Attorney for the Southern District of Texas.

    3.    Ms. Voorhees has direct and independent knowledge of the facts underlying this complaint, and the facts and allegations underlying this complaint have not been publicly

disclosed, as public disclosure is defined under 31 U.S.C. § 3730. Ms. Voorhees is an "original source" as that term is defined under 31 U.S.C. § 3730(e).

4. Kelsey-Seybold is a business that provides healthcare through 19 multispecialty care centers and a specialized sleep center throughout the Greater Houston area. Kelsey-Seybold has operations throughout the State of Texas. Kelsey-Seybold is a Florida Corporation doing business in the State of Texas. Kelsey-Seybold has already made an appearance in this case.

## II. JURISDICTION AND VENUE

5. This court has jurisdiction pursuant to 31 U.S.C. §§ 3720(b) and 3732, which provide that any action under section 3730 may be brought in any judicial district in which the Defendant(s) resides or transacts business or in which any act proscribed by 31 U.S.C. § 3729 occurred. Defendant Kelsey-Seybold maintains operations in this jurisdiction.

6. Venue is proper in this district and division pursuant to 31 U.S.C. § 1391(a) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this district and it is the district in which the Defendant's business is located and operated.

## III. INTRODUCTION

7. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements and claims made, used and caused to be made, used or presented by Kelsey-Seybold and/or its agents and employees in violation of the Federal Civil False Claims Act ("FCA"), 31 U.S.C. §3729, *et seq*.

## IV. FACTS

**A. Introduction**

8. Kelsey-Seybold provides healthcare through its primary care physicians and specialists in different medical fields throughout the Greater Houston area to individuals that are

eligible for reimbursement by Medicare and Medicaid. Defendant is currently engaging in, and in the past has engaged in a pattern and practice of intentionally submitting false and fraudulent claims for reimbursement to Medicare.

9. Kelsey-Seybold provides services to 19 different specialty care facilities and one sleep center in the Greater Houston area, including the Berthelsen Main Campus at 2727 West Holcombe Blvd., Houston, Texas 77025, which Ms. Voorhees was employed for at least four (4) days a week, and Spring Medical and Diagnostic Center at 15655 Cypress Woods Medical Dr., Suite 100, Houston, Texas 77014, which Ms. Voorhees was employed for at least one (1) day a week.

10. Kelsey-Seybold disseminated policies and procedures that all employees, including physicians, nurses, and billing personnel were expected to follow.

11. Kelsey-Seybold has control over claims for services provided by its physicians and nurses. Kelsey-Seybold bills patients in Texas, and bills Medicare on behalf of its physicians and nurses.

12. Relator began working for Kelsey-Seybold on January 23, 2017, as a billing specialist. During her tenure with Kelsey-Seybold, Relator complained multiple times about improper, illegal and unethical Medicare billing practices. She was constructively terminated on November 21, 2017, after making numerous complaints to Kelsey-Seybold about unethical and illegal practices regarding Medicare billing.

**B.     Medicare Violations**

13. Kelsey-Seybold billed federal healthcare programs for services that did not meet Medicare coverage requirements. Kelsey-Seybold also padded its bills so as to include services

that did not occur. Kelsey-Seybold knew or should have known that these services were incorrectly billed under the Medicare benefits it billed for.

14. Medicare pays a reimbursement rate to provide reasonable and necessary medical services to qualifying Medicare patients. Upon Relator's arrival as an employee for Kelsey-Seybold, Relator explained the issue of physicians coding patients as consults, rather than as new patients. Physicians bill through their work relative value unit ("wRVU"), which determines the amount of work that is being done by each physician and their hospital or clinic. This issue was brought to Relator's attention by an E&M coder named Irma. Relator then informed her boss Maria Alcantara of the issue. Relator pointed Kelsey-Seybold to the difference in coding a patient as a consult rather than a new patient. Using guidelines from the Association of Community Cancer Centers, Relator told Alcantara that most patients could not be coded as consults, which would result in a higher wRVU for physicians, rather, the patients should be properly coded as new patients. Billing patients inappropriately as consults rather than as new patients costs Medicare more as the inaccurate billing results in a higher wRVU for physicians.

15. Despite Relator's best attempts to get Kelsey-Seybold to stop its practices, Kelsey-Seybold physicians continued to code their visits with patients inappropriately costing Medicare thousands of dollars.

16. Relator was promised that practices would change after she alerted Kelsey-Seybold to the issues with its billing practices, however, on October 18, 2017, Relator received an email from Dr. Patel, a department head at Kelsey-Seybold, that explained that he would continue coding new patients as consults similar to the way it was done prior to Relator's arrival.

17. Relator witnessed this continued practice at Kelsey-Seybold. Relator was also informed that the same issue was brought to Dr. Patel's attention by senior coder Maria Escobar in August of 2016 and had not been corrected in the interim.

18. Relator raised this issue on numerous occasions. On November 14, 2017, Relator sent an email to Irma and copied Administrator Mary Ann McBroom. The email discussed a meeting Relator had with Coding Improvement where 58 consult charges were reviewed but only 9 met the correct criteria for a consult charge. Some of these consult charges were billed to Medicare. Despite Relator repeatedly raising the issue, it was not corrected.

19. Relator has knowledge and belief that Kelsey-Seybold engaged in a scheme to bill Medicare at an incorrect code without regard to patients' actual conditions or needs, or the costs to Medicare. This plan to maximize revenue by billing at an inappropriate code was constantly combatted by Relator, however, her efforts were in vain.

20. Relator was ultimately constructively terminated based on her complaints about these illegal and unethical billing practices. The illegal practice of billing patients to Medicare as consults rather than new patients occurred during Relator's entire Kelsey-Seybold employment.

**C.    The False Claims Act**

21. The False Claims Act (FCA) provides, in pertinent part, that:

> (a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government; . . . or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,
> \*\*\*

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person
\*\*\*\*

(b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.
31 U.S.C. § 3729.

**D.     New Patients versus Consultation**

22.     Medicare Part B will only cover those services that are "reasonable" and "necessary." *See* 42 U.S.C. § 1395y(a)(l)(A) ("[N]o payment may be made under part A or part B of this subchapter for any expenses incurred for items or services ... which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member").

23.     Coding is important for billing practices to ensure the billing is both reasonable and necessary. Kelsey-Seybold, however, ignores the implications of coding patients correctly. A new patient code solely applies to a patient who has not received professional service from that physician or a physician in the same specialty or practice within a specified time. A consultation code solely applies to a physician whose opinion regarding an evaluation was either requested by another physician or from another source that referred the patient to the physician.

24.     Therefore, in order to bill properly, Kelsey-Seybold has a duty to inform its physicians and nurses of the differences in coding practices. Relator attempted to disseminate this information to no avail.

25. In order to assess the reasonableness and necessity of services and determine whether reimbursement is appropriate, Medicare requires proper and complete documentation of the services rendered to beneficiaries with accurate coding information.

**F.    Ms. Voorhees' Complaints and her Constructive Termination**

26. On January 23, 2017, Relator began working for Kelsey-Seybold. Ms. Voorhees, after working for Kelsey-Seybold for two (2) months, discovered many billing issues. With the intent to disclose and correct the billing issues, Ms. Voorhees brought the issues to her boss, Cristiana Alcantara's attention. Ms. Alcantara instructed Ms. Voorhees to create an issues and resolution spreadsheet. The billing issues that Ms. Voorhees complained about were not new to Kelsey-Seybold because her boss, Ms. Alcantara, informed Ms. Voorhees about her issues list.

27. In August of 2017, Ms. Voorhees informed Kelsey-Seybold that United Healthcare planned on stopping its acceptance of consult codes beginning on October 1, 2017.

28. Ms. Voorhees recognized this as an opportunity to inform the Kelsey-Seybold team, yet again, that billing patients as consults rather than new patients was typically incorrect. United Healthcare in October 2017 delayed its planned change, and Kelsey-Seybold doctors and nurses continued its illegal practice. Ms. Voorhees even went as far as changing billing codes, which drew the ire of Dr. Patel. Despite her explanation regarding the different codes, Ms. Voorhees billing complaints were always placed on the back burner.

29. In fear of violating her ethical duties, Ms. Voorhees contacted the Office of Inspector General ("OIG"). Ms. Voorhees alerted her superiors at Kelsey-Seybold during a meeting on October 25, 2017, of the information she received from the OIG. An official from the OIG informed Ms. Voorhees that she should not touch or place her name on any of the claims that Kelsey-Seybold was billing incorrectly.

30. After informing her superiors at Kelsey-Seybold about her call to the OIG, Ms. Voorhees received disparate treatment. She was constantly subjected to being under watchful eyes of the Administrator, Mary Ann McBroom, given additional tasks, as well as being yelled at and questioned when she responded to tasks in which were more of a clinical nature rather than billing. The treatment became so bad that Ms. Voorhees contacted the OIG again and filed an official complaint. The disparate treatment from her superiors, however, did not cease. As Ms. Voorhees complained about the inappropriate billing, she was ignored. Because of the treatment she endured, Ms. Voorhees was forced to resign in November of 2017.

31. Attached hereto and made part of this Complaint is **Exhibit A** which contains documents supportive of Mr. Voorhees' claims. These documents have been provided to the Attorney General of the United States and to the United States Attorney for the Southern District of Texas.

## V.     CAUSES OF ACTION

### COUNT I:     False or Fraudulent Claims

32. Relator repeats and re-alleges paragraphs 1 through 28 above, as if fully set forth herein.

33. Defendant knowingly presented, or caused to be presented, to an officer or employee of the United States Government, false or fraudulent claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), specifically, claims for payment to Medicare and Medicaid for billing new patients as consults, despite Relator's best efforts to warn Defendant to cease such practices.

34. Because of Defendant's illegal acts, the United States sustained damages in an amount to be determined at trial, and therefore is entitled to treble damages under the False Claims Act, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

## COUNT II:   False Statements

35. Relator repeats and re-alleges paragraphs 1 through 59 above, as if fully set forth herein.

36. Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B). Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial, and therefore is entitled to treble damages under the False Claims Act, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

## Count III:   Unjust Enrichment

37. Relator repeats and re-alleges paragraphs 1 through 59 above, as if fully set forth herein.

38. During the time period of Relator's employment with Kelsey-Seybold, the United States paid Medicare and Medicaid costs for services that were inappropriately coded, despite Relator's warnings.

39. By directly or indirectly obtaining federal funds from Medicare to which they were not entitled Defendant was unjustly enriched at the expense of the United States, and are liable to account and pay for their illegal billing practice.

## V.   PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Relator and the United States of America demand a trial by jury and, after final trial, that judgment be rendered against the Defendants, jointly and severally, as follows:

    A.    for damages that are as yet indeterminable, for violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), (2), and (3);

    B.    for treble the damages found for violations of 31 U.S.C. § 3729(a)(1), (2), and (3);

C. for damages that are as yet indeterminable, for violations of the False Claims Act, 31 U.S.C. 3730(h);

D. for a fine of not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $11,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $11,000, for each unlawful act committed;

E. for litigation costs;

F. for special damages;

G. for reasonable attorneys' fees and costs; and

H. for such other and further relief, at law or in equity, to which Relators are justly entitled.

Respectfully submitted,

kennard law P.C.

By: _____
Alfonso Kennard, Jr.
Texas Bar No. 24036888
alfonso.kennard@kennardlaw.com
**ATTORNEY IN CHARGE**
Texas Bar No. 24104276
2603 Augusta Dr., Suite 1450
Houston, TX 77057
(713)742-0900 (main)
(713)742-0951 (facsimile)
**ATTORNEYS FOR RELATOR**
**MARGARET VOORHEES**