Case 4:18-cv-03748 Document 28 Filed on 01/29/21 in TXSD Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
January 29, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARGARET VOORHEES, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-03748 |
| | § | |
| KELSEY-SEYBOLD CLINIC, P.A., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Margaret Voorhees ("Voorhees") brings this *qui tam* lawsuit against Defendant Kelsey-Seybold Clinic, P.A. ("Kelsey-Seybold"), alleging that the health provider fraudulently billed federal healthcare programs for services that did not meet Medicare coverage requirements. Now before me is Defendant's Motion to Dismiss Relator's Second Amended Complaint. Relying on Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6), Kelsey-Seybold asks me to throw out this entire lawsuit. After reviewing the motion, the response, the reply, the operative complaint, and the applicable legal authorities, I **RECOMMEND** that the motion be **GRANTED** in part and **DENIED** in part.

## THE FALSE CLAIMS ACT

"First passed at the behest of President Lincoln in 1863 to stem widespread fraud by private Union Army suppliers in Civil War defense contracts," the False Claims Act ("FCA") "is intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side." *United States ex rel. Grubbs*

*v. Kanneganti*, 565 F.3d 180, 184 (5th Cir. 2009) (cleaned up). To that end, the FCA imposes liability on "any person" who, among other things, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States government, or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)–(B).

The FCA permits a private person, known as a "relator," to bring an action in the name of the United States for a violation of the FCA. *See id.* § 3730(b)(1). Such lawsuits are commonly referred to as *qui tam* suits. "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 n.1 (2000). Relators have standing to sue in *qui tam* actions because "a *qui tam* relator is, in effect, suing as a *partial* assignee of the United States['s]" claim for damages. *Id.* at 773 n.4.

The FCA encourages private citizens to report fraud by promising them a percentage of any eventual recovery obtained through a final judgment or settlement. *See* 31 U.S.C. § 3730(d). All told, *qui tam* suits have netted the government more than $60 billion in recoveries since 1986 and are averaging several billion dollars a year in recent years. *See* JOHN T. BOESE, *Civil False Claims and Qui Tam Actions* § 3 (5th ed. 2020), Westlaw 2015 WL 5620018.

2

"After the relator has filed suit, the action is sealed for sixty days while the government decides whether to intervene." *United States ex rel. Jaison v. McKesson Corp.*, 649 F.3d 322, 325 n.3 (5th Cir. 2011) (citing 31 U.S.C. § 3730(b)(2)). "If the government chooses not to intervene, the relator may proceed independently." *Id.* (citing 31 U.S.C. § 3730(e)(4)(B)). If the government intervenes and takes over the action, the relator may receive 15 to 25 percent of the proceeds of the action or settlement. 31 U.S.C. § 3730(d)(1). If the government declines to intervene, the relator may receive 25 to 30 percent. *Id.* § 3730(d)(2).

## FACTUAL BACKGROUND

Accepting the allegations in the Second Amended Complaint as true and construing them in the light most favorable to Voorhees, the pending lawsuit sets forth a relatively simple, yet devious, plot to defraud the federal government. Kelsey-Seybold provides healthcare services in the Greater Houston area through primary care physicians and specialists located at 20 separate facilities. Voorhees began working for Kelsey-Seybold on January 23, 2017, as a billing specialist. Soon after her employment began, Voorhees discovered that Kelsey-Seybold "billed federal healthcare programs for services that did not meet Medicare coverage requirements" and "also padded its bills so as to include services that did not occur." Dkt. 20 at 3–4. In particular, Voorhees claims that Kelsey-Seybold improperly coded patients as consults, rather than new patients.

"A new patient code solely applies to a patient who has not received professional service from that physician or a physician in the same specialty or

3

practice within a specified time." *Id.* at 6. Meanwhile, "[a] consultation code solely applies to a physician whose opinion regarding an evaluation was either requested by another physician or from another source that referred the patient to the physician." *Id.* The reason coding is significant, according to the live complaint, is that labeling a patient as a consult, as opposed to a new patient, results in larger (and unwarranted) payments due Kelsey-Seybold from the federal government. According to Voorhees, "Kelsey-Seybold engaged in [this] scheme to bill Medicare at an incorrect code without regard to patients' actual conditions or needs, or the costs to Medicare." *Id.* at 5.

Voorhees claims that she discovered this ruse and immediately brought the issue to the attention of her supervisors at Kelsey-Seybold. The operative complaint recounts several occasions in which she raised the improper coding with others at Kelsey-Seybold, but her efforts were reportedly rebuffed at each and every turn. When her superiors at Kelsey-Seybold continuously refused to do the right thing and code properly, Voorhees says she contacted the Office of Inspector General to air her grievances about the company's illegal and unethical billing practices. "Despite [Voorhees's] best attempts to get Kelsey-Seybold to stop its practices, Kelsey-Seybold physicians continued to code their visits with patients inappropriately costing Medicare thousands of dollars." *Id.* at 4.

As a result of the conduct described above, Voorhees alleges that Kelsey-Seybold violated the FCA by (1) knowingly presenting a false claim for payment in violation of 31 U.S.C. § 3729(a)(1)(A); and (2) knowingly making or using a false

4

record material to a false claim. *See id.* § 3729(a)(1)(B). Voorhees also advances an independent state law claim for unjust enrichment.[1]

## LEGAL STANDARDS

### A. RULE 12(b)(1)

A court must dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Subject matter jurisdiction fails if the plaintiff lacks Article III standing. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986). Therefore, when a plaintiff lacks standing to sue in federal court, it is appropriate to dismiss the action pursuant to Rule 12(b)(1) for want of subject matter jurisdiction. *See Chair King, Inc. v. Hous. Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997).

---

[1] Although there is no separate count for an FCA retaliation claim in her live pleading, Voorhees claims in the prayer for relief that she is entitled to "damages that are as yet indeterminable, for violations of the False Claims Act, 31 U.S.C. [§] 3730(h)." Dkt. 20 at 10. Section 3730(h) is the whistleblower provision of FCA, which prohibits harassment, retaliation, or threatening of employees who assist in or bring *qui tam* actions. Out of an abundance of caution, Kelsey-Seybold requests that, to the extent Voorhees intended to assert a FCA retaliation claim, such a claim should be dismissed under Rule 12(b)(6) for failure to allege the essential elements. In her response to the motion to dismiss, Voorhees did not address Kelsey-Seybold's arguments regarding retaliatory discharge. As a result, she has abandoned the claim and it may be properly dismissed. *See Vela v. City of Houston*, 276 F.3d 659, 678–79 (5th Cir. 2001).

## B.     RULE 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) provides that a defendant is entitled to dismissal when the plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion, I must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (quotation omitted). Because a complaint must be liberally construed in favor of the plaintiff, "a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted." *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up).

## C. RULE 9(b)

Because FCA claims involve allegations of fraud, they must comply with the heightened pleading requirements of Rule 9(b). *See Grubbs*, 565 F.3d at 185. That rule requires a party alleging fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). More specifically, Rule 9(b) requires that a complaint detail "the who, what, when, and where before access to the discovery process is granted." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (cleaned up). The Fifth Circuit has mandated that Rule 9(b)'s heightened standard for pleading is to be applied "with bite and without apology." *Grubbs*, 565 F.3d at 185 (quotation omitted). At a bare minimum, a FCA plaintiff must allege "'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 240 (5th Cir. 2020) (*quoting Grubbs*, 565 F.3d at 185). The failure of a plaintiff to plead in compliance with Rule 9(b) is considered a failure to state a claim under Rule 12(b)(6). *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

## ANALYSIS

### A. THE FCA CLAIMS

To properly set forth a FCA claim, Voorhees must plead the following four elements: (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that

7

caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (quotation omitted). Because, as already noted, "the linchpin of an FCA claim is a false claim," a plaintiff alleging a violation of the FCA must satisfy the heightened Rule 9(b) pleading standard. *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008). This requires Voorhees to identify "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Id.* (cleaned up).

Kelsey-Seybold argues that the Second Amended Complaint fails to meet the Rule 9(b) pleading standard in two main respects. First, Kelsey-Seybold claims the operative complaint "fails to make particular allegations of fraud at the level of any individual transaction with the government." Dkt. 21 at 17. Second, Kelsey-Seybold avers that the Second Amended Complaint "fails to provide the particular details of a scheme to submit false claims." *Id.* at 19 (quotation omitted). Neither argument is persuasive.

As to the first argument, Kelsey-Seybold claims that there are no direct allegations that it submitted any false claims to the federal government, and no factual basis for the contention that Kelsey-Seybold improperly submitted claims for payment by coding visits as consults, as opposed to new patients. Candidly, I am a tad puzzled by this line of reasoning. Based on my reading of the Second Amended Complaint, there are a litany of allegations that Kelsey-Seybold

8

submitted claims to the federal government for payment. *See* Dkt. 20 at 3 (Kelsey-Seybold "bills Medicare on behalf of its physicians."); *id.* ("Kelsey-Seybold billed federal healthcare programs for services that did not meet Medicare coverage requirements."); *id.* at 4 ("Kelsey-Seybold knew or should have known that these services were incorrectly billed under the Medicare benefits it billed for."). Similarly, the Second Amended Complaint is replete with detailed allegations that Kelsey-Seybold improperly coded visits as consults when the patients were actual new patients. *See id.* ("Billing patients inappropriately as consults rather than as new patients costs Medicare more."); *id.* at 5 ("The illegal practice of billing patients to Medicare as consults rather than new patients occurred during Relator's entire Kelsey-Seybold employment."); *id.* at 8 (Kelsey-Seybold "knowingly presented . . . claims for payment to Medicare and Medicaid for billing new patients as consults, despite Relator's best efforts to warn [Kelsey-Seybold] to cease such practices.").

Rule 9(b) presents a high, but not insurmountable, standard. This standard requires Voorhees to plead "reliable indications of fraud and to plead a level of detail that demonstrates that an alleged scheme likely resulted in bills submitted for government payment." *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 (5th Cir. 2013). I think the Second Amended Complaint easily passes this test. Voorhees alleges that her job as a billing specialist gave her a front row seat to Kelsey-Seybold's billing practices. For the entire seven-month time period she worked at Kelsey-Seybold, from January

9

23, 2017 through November 21, 2017, Voorhees claims she witnessed first-hand "Kelsey-Seybold engag[ing] in a scheme to bill Medicare at an incorrect code without regard to patients' actual conditions or need, or the costs to Medicare." Dkt. 20 at 5. Boiled down to its essence, Voorhees alleges that Kelsey-Seybold improperly billed patients as consults when they were actually new patients. Because patients coded as consults are billed at a higher rate than patients coded as new patients, the natural effect of this purported mislabeling was that the federal government paid Kelsey-Seybold more money than it should have paid. Voorhees also contends that she tried to bring this issue to the attention of others at Kelsey-Seybold, including her supervisor (Marc Alcantara), a coder (Irma), a department head (Dr. Patel), an administrator (Mary Ann McBroom), and a senior coder (Maria Escobar). The live pleading describes in great detail Voorhees's protestations to Kelsey-Seybold management, and their refusal to revise their billing practices to address her concerns. This meets Rule 9(b)'s heightened pleading standard.

The one case Kelsey-Seybold highlights as "similar" to the allegations raised by Voorhees is *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717 (5th Cir. 2008). Although *Dizney* also involved allegations of improper billing, the similarities stop there. Affirming the district court's dismissal, the Fifth Circuit noted that the live complaint simply lobbed together 21 corporate defendants and six individual defendants without any particularized allegations on what each

defendant did wrong. *See id.* at 722. That is a far cry from this case's focused allegations that one corporate defendant operated a massive billing fraud.

Turning to Kelsey-Seybold's second main argument, the health provider argues that there is no factual support for the allegation that it engaged in a pattern or practice of submitting false claims. As discussed more fully above, I believe the allegations as they are spelled out in the Second Amended Complaint are sufficient to satisfy Rule 9(b)'s standards. Instead of broad and sweeping allegations devoid of substance, the Second Amended Complaint provides indicia of actual knowledge of FCA-violating fraud.

As I see it, Kelsey-Seybold's real complaint is that the lawsuit's allegations are simply untrue. According to Kelsey-Seybold, Medicare stopped recognizing consultation codes in 2010. As a result, Kelsey-Seybold claims it would be impossible to employ a scheme to submit claims for payment by coding visits as consults, rather than new patients. Additionally, while Voorhees's complaint is premised on the idea that Kelsey-Seybold received different sums from the government depending on how it coded patient visits, Kelsey-Seybold maintains that it was not reimbursed on a fee-for-service basis for most Medicare patients treated at its facilities since 2017. Kelsey-Seybold might be right. The allegations contained in the Second Amended Complaint might have no merit. But my job at this stage of the proceedings is not to conduct a deep dive into the merits of the claim. *See Twombly*, 550 U.S. at 556 ("A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and

11

that a recovery is very remote and unlikely.") (cleaned up). The issue at the motion to dismiss stage is not whether the plaintiff will ultimately prevail, but whether Voorhees is entitled to begin the discovery process and offer evidence to support her claims. Because I am obliged to "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor," I conclude that Voorhees has sufficiently stated an FCA claim as a matter of law. *See Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019).

### B.    UNJUST ENRICHMENT

In addition to bringing FCA claims, Voorhees asserts a common-law unjust enrichment claim. Kelsey-Seybold argues that the unjust enrichment claim must be dismissed under Rules 12(b)(1) and 12(b)(6) because Voorhees lacks standing to pursue the state law claim on behalf of the United States Government. I agree.

The law is well-settled. "A relator in a *qui tam* FCA action does not have standing to assert common law claims based upon injury sustained by the United States." *United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 14 (D.D.C. 2003). *See also United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 451–52 (S.D.N.Y. 2001) (holding that a relator lacks standing to bring common-law claims of fraud, mistake of fact, and unjust enrichment); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D. Mass. 2000) (same). The reasoning behind this rule is simple and straightforward.

In *qui tam* suits, the real party in interest is the government. *See United States ex rel. Foulds v. Tex. Tech Univ.*, 171 F.3d 279, 289 (5th Cir. 1999). Congress has expressly authorized assignment of causes of action under § 3729. *See* 31 U.S.C. § 3730(b)(1) ("A person may bring a civil action for a violation of section 3729 for the person and for the United States Government."). That assignment, however, is limited by its express terms to violations of the FCA. Importantly, there is no assignment to individuals to bring *qui tam* claims under the common law or other statutes. *See United States ex rel. Ligai v. ETS-Lindgren Inc.*, No. H–112973, 2014 WL 4649885, at *15 (S.D. Tex. Sept. 16, 2014) (Although Congress specifically authorized "private litigants to sue for damages for violations of § 3729, despite the fact that the only damaged party is the government, . . . [t]here is no assignment to bring claims under the common law or other statutes."). Thus, a relator's standing extends only to the legal actions permitted by the FCA.

Voorhees argues that the Supreme Court's 2008 opinion in *Sprint Commc'ns. Co., L.P. v. APCC Servs. Inc.*, 554 U.S. 269 (2008) "made clear" that a relator has standing to assert common law claims, such as unjust enrichment, on behalf of the government. Dkt. 24 at 14. The obvious problem with this argument, as Kelsey-Seybold is quick to note, is that the *Sprint* decision "had absolutely nothing to do with whether an individual can pursue a common law claim on behalf of the federal government or with FCA claims at all." Dkt. 25 at 6. I have carefully reviewed *Sprint* and it provides no support for Voorhees's position. The *Sprint* case addressed whether third-party companies hired by pay-phone operators to collect

13

compensation for coinless long-distance calls have standing to sue telecommunication companies over the amount of the fees. Nothing in the opinion remotely addresses the propriety of a relator bringing a common-law *qui tam* claim on behalf of the government. It is noteworthy that federal courts addressing the standing issue since *Sprint* have uniformly held that individual litigants cannot bring common law claims on behalf of the federal government. *See, e.g.*, *United States v. Public Warehousing Co., K.S.C.*, 242 F. Supp. 3d 1351, 1361 (N.D. Ga. 2017); *Jacobs v. Bank of Am. Corp.*, No. 1:15-cv-24585, 2016 WL 11653744, at *8 (S.D. Fla. Dec. 20, 2016); *United States ex rel. Fortenberry v. Holloway Grp., Inc.*, 515 B.R. 827, 830 (W.D. Okla. 2014). I see no reason to forge a different path.

In short, Voorhees lacks standing to file an unjust enrichment claim as a representative of the government. She has sustained no injury-in-fact, and has no Article III standing, but-for a partial assignment of the government's damages claim under the FCA. *See Vt. Agency of Nat. Res.*, 529 U.S. at 773.

**C.    LEAVE TO AMEND**

There is one more issue I need to address. Voorhees asks that she be permitted to amend her complaint if any part of Kelsey-Seybold's motion is granted.

As an initial matter, it is important to recognize that Voorhees has already been given three (that's right, three) opportunities to plead a proper claim. She filed an original complaint on October 10, 2018, an amended complaint on January 4, 2019, and a second amended complaint on July 7, 2020. Rule 15(a) provides that

a plaintiff has the right to amend "once as a matter of course." FED. R. CIV. P. 15(a)(1). "Once means once; the rule does not allow a right to amend after each amended complaint is filed." *C3PO Int'l, LTD. v. Dyncorp Int'l LLC*, 4:14-CV-564-A, 2016 WL 3417162, at *1 (N.D. Tex. Feb. 4, 2016).

In determining whether to grant Voorhees yet another chance to amend her complaint (that is, a fourth bite at the apple), I may consider a number of factors, including undue delay, bad faith or dilatory motive, repeated failures to cure pleading deficiencies, undue prejudice to the opposing party, and futility of amendment. *See Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). Curiously, Voorhees does not suggest that there are any additional facts she can allege at the present time to overcome the purely legal deficiency in her unjust enrichment claim. Instead, she asks me to, in effect, defer a ruling on the motion to dismiss so she can conduct discovery aimed at unearthing some factual basis for her unjust enrichment claim. *See* Dkt. 24 at 15 ("Many of the facts that Defendant seeks for purposes of clarification are properly obtained through discovery, which has yet to begin."). This is simply not permitted. *See Ambellu v. Re'ese Adbarat Debre Selma Kidist Mariam*, 406 F. Supp. 3d 72, 83 (D.D.C. 2019) (plaintiff's request to obtain discovery before responding to a motion to dismiss constituted an "end-run around well-established pleading standards"); *Felder v. WMATA*, 105 F. Supp. 3d 52, 59 (D.D.C. 2015) ("A plaintiff may not, however, use discovery to obtain the facts necessary to establish a claim."). Voorhees has already had three bites at the apple. Enough is enough. It would be futile to give her another

opportunity to craft an unjust enrichment claim. She does not have standing to pursue an unjust enrichment claim and no amount of discovery will change that outcome. The request to amend the complaint is denied.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion to Dismiss Relator's Second Amended Complaint (Dkt. 21) be **GRANTED** in part and **DENIED** in part. Specifically, I recommend that the FCA claims under 31 U.S.C. § 3729(a)(1)(A) and (B) remain alive and kicking, while the unjust enrichment and FCA retaliation claim be dismissed. I also reject Voorhees's request to file another amended complaint.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 29th day of January 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE